**Roger Guy RUSSELL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–04–00190–CR.**

Court of Appeals of Texas, Waco.

Jan. 24, 2007.

Travis B. Bryan, III, Bryan, Stacy & Dillard LLP, Bryan, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## CORRECTED [1] OPINION ON PE-TITION FOR DISCRETION-ARY REVIEW

FELIPE REYNA, Justice.

As authorized by Rule 50 of the Rules of Appellate Procedure, we issue this modified opinion within 30 days after the State filed a Petition for Discretionary Review. TEX.R.APP. P. 50.

A jury convicted Robert Guy Russell, Jr. of murder under the influence of sudden passion and assessed his punishment at ten years' imprisonment. Russell con-tends in a single issue that the trial court erred in admitting a confession he made after stating he needed to call his attorney. We will affirm.

During an altercation in the parking lot of a College Station night club, Russell stabbed to death James Ray Davidson, Jr. Officer Adam Henderson with the College Station Police Department was patrolling the parking lot at the time of the murder. As Russell drove away, a witness in the crowd told Officer Henderson that the driver of the van had stabbed someone. With Henderson pursuing him, Russell re-turned to the night club and exited the vehicle. He was ordered to the ground and handcuffed. At that time, Henderson asked a single question about the location of the knife used in the stabbing. Russell indicated it was in the crowd of people now surrounding the victim. Russell was taken by Henderson to his patrol car where he was searched and his pockets emptied. At that time, Russell said, "I need my cell phone to call my lawyer." Henderson re-sponded saying, "I'm not going to ask you any questions without your lawyer." Rus-sell was left in the back of Henderson's patrol car and asked no further questions while at the scene. Once at the police station, Russell was given his *Miranda* warnings which he waived and made a statement to police.

In a suppression hearing, the trial court concluded that because it fell within the public safety exception to *Miranda*, the questioning by Officer Henderson regard-ing the knife was not a custodial interroga-tion, and thus, Russell did not invoke the right to counsel in response to an express question or its functional equivalent. The trial court overruled the motion and al-lowed Russell's statement to be admitted.

---

1. This corrected opinion is being issued to correct an erroneous notation in the Opinion on Petition for Discretionary Review which issued on January 17, 2007, regarding the year of issuance. TEX.R.APP. P. 19.3(a).

■ In reviewing a trial court's determination in a suppression hearing, a bifurcated standard of review is required. *See Montanez v. State*, 195 S.W.3d 101, 108 (Tex.Crim.App.2006); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The court's ruling is reviewed for abuse of discretion. *Montanez*, 195 S.W.3d at 108; *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim.App.1999). Almost total deference is owed to the determination of historical facts. *Montanez*, 195 S.W.3d at 108; *Guzman*, 955 S.W.2d at 89. However, we review *de novo* a trial court's ruling on mixed questions of law and fact which do not turn on the credibility and demeanor of witnesses. *Montanez*, 195 S.W.3d at 106; *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). Thus, while affording almost total deference to the findings of fact, we review de novo the conclusions of law to determine if the trial court abused its discretion by admitting Russell's confession. *See Montanez*, 195 S.W.3d at 108.

■ In *Miranda v. Arizona*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination "is fully applicable during a period of custodial interrogation." 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966). When seeking to introduce a defendant's statement in its case-in-chief, the State must "[demonstrate] the use of procedural safeguards effective to ensure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612. An accused, prior to a custodial interrogation, must be warned that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

■ This case turns on whether the rule of *Edwards v. Arizona* applies. The bright-line constitutional rule of *Edwards*

is that once an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). Triggering this rule requires "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991). Therefore, if Russell's on-scene statement regarding his attorney is an effective trigger of the rule of *Edwards*, then his subsequent waiver of *Miranda* rights is not knowing and intelligent because Russell did not initiate the subsequent communication with the officers. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

■ The trial court in this case erroneously concluded that the application of the public safety exception meant the questioning by police was not a custodial interrogation. The public safety exception recognizes that in narrow circumstances, the threat to the safety of the officers and the general public outweighs the need for giving the *Miranda* warnings. *New York v. Quarles*, 467 U.S. 649, 657, 104 S.Ct. 2626, 2632, 81 L.Ed.2d 550 (1984). Were such a brief, informal questioning by police for the purpose of protecting public safety, such as that by Officer Henderson, not a custodial interrogation, then there would have been no need to find an exception to the rules of *Miranda. See id.*

■ Nonetheless, the fact that there had been a custodial interrogation at one point does not mean that *Miranda* rights

continued unceasing from that moment. The *Miranda* protections are constitutionally mandated to protect an accused from the combined compulsions inherent in law enforcement custody coupled with law enforcement interrogation. *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624; *Melton v. State*, 790 S.W.2d 322, 326 (Tex.Crim.App. 1990). Therefore, a request for counsel must be such that it can reasonably be understood as a desire "for the particular sort of lawyerly assistance that is the subject of *Miranda*" for it to invoke the *Miranda* right to counsel. *McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209. For example, the invocation of a defendant's Sixth Amendment right to counsel during a judicial proceeding is not an effective invocation of his *Miranda* right to counsel because it is not in response to a custodial interrogation. *See id.; Green v. State*, 934 S.W.2d 92 (Tex.Crim.App.1996). Also, during negotiations to talk an accused out of suicide, a request to speak to her attorney was not effective for *Miranda* purposes. *Saldivar v. State*, 980 S.W.2d 475, 490 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). Similarly, an accused has been held not to invoke his *Miranda* right to counsel in asking for an attorney before consent to a police search. *United States v. LaGrone*, 43 F.3d 332, 336 (7th Cir. 1994); *see also United States v. Maldonado*, 213 F.Supp.2d 710, 717 (S.D.Tex.2002).

In *LaGrone*, police executed an arrest warrant for LaGrone at his grocery store. *Id.* at 333. LaGrone was *Mirandized* and questioned briefly regarding weapons. *Id.* Sometime later, a different officer asked LaGrone to consent to a search of the store. *Id.* LaGrone requested to speak to his attorney before signing the consent form. *Id.* Following unsuccessful attempts to reach his attorney, LaGrone consented to the search. *Id.* He was subsequently taken to the police station where he waived his *Miranda* rights and gave a statement

to police. *Id.* At trial LaGrone claimed that the request for counsel for the search was also an invocation of his *Miranda* right to counsel. *Id.* at 335–36. However, the court held the request for counsel in dealing with a search is not a request for counsel *in dealing with* a custodial interrogation as required in *McNeil*. *Id.* at 336 (citing *McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209). As the LaGrone Court was careful to note, had the questions regarding the search been intermingled with queries regarding criminal conduct, the entire conversation would have been a custodial interrogation. *Id.* at 339 n. 8. In that situation, the request for counsel would have been effective for both purposes, the search and the interrogation. *Id.* The court found that the two questionings by police were "distinct in time" and therefore distinct in analysis. *Id.* at 339.

In this case, Russell's mention of his attorney was not in response to a question by Officer Henderson. It came some time after the question and answer regarding the knife and in response to a search and his cell phone being taken away. A request for counsel in these circumstances cannot reasonably be seen as a request for the type of assistance envisioned by *Miranda*.

 Further, the Supreme Court has stated an interrogation is "express questioning [or] any words or action on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The question of whether police words or conduct is an interrogation is viewed from the perspective of the accused, and the intent of police is relevant only to the extent it relates to whether the officer knew or should have known she would elicit an

incriminating response.[2] *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90; *United States v. Webb,* 755 F.2d 382, 388 (5th Cir.1985); *Bush v. State,* 697 S.W.2d 397, 403 (Tex. Crim.App.1985).

The *LaGrone* court found this instructive in its conclusion that a request for consent to search cannot be considered a custodial interrogation because questions regarding a search are not likely to elicit an incriminating response. It is for this same reason that questions normally attendant to arrest and processing are not interrogations for *Miranda* purposes. *Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) (plurality op.); *Garner v. State,* 779 S.W.2d 498, 501 (Tex.App.-Ft. Worth 1989, pet. ref'd). Henderson's action of conducting a physical search of Russell and escorting him to the patrol car was not likely to induce an incriminating statement; it was not likely to induce any statement at all. Therefore, we hold that searching Russell after a single query cannot be considered a custodial interrogation and Russell's mention of an attorney as he was being placed in a patrol car cannot be understood as a request "for the particular sort of lawyerly assistance that is the subject of *Miranda.*" *McNeil,* 501 U.S. at 178, 111 S.Ct. at 2209.

Russell contends that, even if he was not then under custodial interrogation, one was inevitable, and the request for counsel was in dealing with the impending interrogation. Some courts have held that the window of opportunity for invoking one's *Miranda* rights extends just beyond an interrogation itself to that time when an interrogation is imminent. *United States v. Kelsey,* 951 F.2d 1196 (10th Cir.1991);

*LaGrone,* 43 F.3d at 339; *State v. Torres,* 330 N.C. 517, 412 S.E.2d 20 (1998). Nonetheless, the Supreme Court has never recognized the right of a person to invoke his *Miranda* rights anticipatorily. *See McNeil,* 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3. At the time of Russell's statement, the police were still securing the crime scene and taking statements from witnesses, and Russell was being placed in the backseat of the patrol car, alone. This is not a situation in which an interrogation is imminent. Further, we do not believe the existing case law supports the right of an accused to invoke his *Miranda* rights in any context other than a custodial interrogation.

Having now held that Russell's mention of his attorney was not in dealing with a custodial interrogation, we overrule Russell's sole issue and affirm the judgment of the trial court. Our opinions and judgment dated November 14, 2006, are withdrawn, and this opinion is substituted as the opinion of the court. Tex.R.App. P. 50. The State's Petition for Discretionary Review is dismissed by operation of law. *Id.*

Chief Justice GRAY concurring without a separate opinion.

---

**2.** The State, in its brief, makes much of Officer Henderson's status as a probationary officer not authorized to interrogate suspects. However, under the analysis set out in *Innis* and *Webb,* this query into an officer's decision not to interrogate is irrelevant. The situation is viewed from the perspective of Russell who could not have known that Officer Henderson was not authorized to interrogate him.